UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN WILLIAMS,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )     No. 1:21-cv-02840-JPH-KMB
                                         )
D. REAGLE,                               )
M. BRYANT,                               )
M. PHLEEGEL,                             )
                                         )
                    Defendants.          )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Kevin Williams is an Indiana Department of Correction ("IDOC") inmate.

Mr. Williams alleges that Defendants subjected him to inhumane conditions of

confinement at Pendleton Correctional Facility in violation of the Eighth

Amendment. Defendants have moved for summary judgment. Dkt. [57]. For the

reasons below, that motion is **GRANTED in part** and **DENIED in part**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a

way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary

judgment is appropriate when there is no genuine dispute as to any of the

material facts, and the moving party is entitled to judgment as a matter of law.

*Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A

"genuine dispute" exists when a reasonable factfinder could return a verdict for

the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's

factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

The facts are considered undisputed except where otherwise noted.

### A. The Parties

Mr. Williams brings claims against three defendants at Pendleton Correctional Facility.  Defendant Reagle was the Warden. Dkt. 58-2 at 1. Defendant Bryant was the Deputy Warden of Re-Entry at Pendleton. Dkt. 58-3 at 1. Defendant Pfleeger[1] was a Correctional Lieutenant in G-Cell House at Pendleton. Dkt. 58-4 at 1.

### B. Mr. Williams's Conditions of Confinement

Between 2018 and August 10, 2022, Mr. Williams was incarcerated at Pendleton in G-Cell House. Dkt. 58-1 at 54 (Williams Deposition). G-Cell House is considered restricted housing and contains segregation housing units, as well as strip cells. *Id.* at 23, 54. Strip cells are used for punishment and have plexiglass walls. *Id.* at 25, 38. Inmates placed in a strip cell are separated from their belongings and provided limited items, such as shower shoes, a pair of socks, boxers, a t-shirt, a blanket, a sheet, a washcloth, a bath towel, and a mattress. *Id.* at 35. When it is time for a shower, Mr. Williams says inmates in G-Cell are also given a small bar of soap. *Id.* at 38. Defendants say inmates on

---

[1] Mr. Williams's complaint uses the name "Phleegel" but filings from Defendants use the name "Pfleeger."  *See, e.g.*, dkt. 27 at 1 (Defendants' Answer).  Therefore, the Court will refer to this Defendant as Lieutenant Pfleeger.  The Clerk is **directed** to update the name on this defendant on the docket to Michael Pfleeger.

strip cell status are given a full hygiene kit, as well as a razor when they shower. Dkts. 58-2 at 2, 58-3 at 3, 58-4 at 2.

Mr. Williams was placed on strip cell status "several times" while confined to G-Cell House. Dkt. 58-1 at 24. As Mr. Williams understands it, the procedure for doing so requires a prison staff member to get prior approval. *Id.* at 36. That approval goes through the shift commander, "which would be a captain or casework manager . . . or higher," including the superintendents. *Id.* at 37. Mr. Williams concedes that he doesn't know "who specifically approved" his strip cell placement. *Id.* But because "[t]hose people all have to approve that sort of status," *id.*, he alleges that Warden Reagle and Deputy Warden Bryant placed him there. *Id.* at 24.

While Defendants Reagle and Bryant dispute that they give approval for inmates to be placed on strip cell status, it's undisputed that they at least are "informed of the decision by receiving a copy of the Incident Report." Dkts. 58-2 at 1, 58-3 at 2. Deputy Warden Bryant explains that the process "goes through the Shift Supervisor, then Control, then to Restrictive Housing Admission where it is signed off by either the Shift Supervisor or the staff member moving the offender." Dkt. 58-3 at 2. While on strip cell status, inmates are "monitored by the Unit Team." *Id.*

Mr. Williams alleges that during nearly his entire time in G-Cell House, including both segregation housing and strip cell status, he was deprived of a hygiene kit. Dkt. 58-1at 41, 51–52, 54. As an indigent inmate who cannot afford to purchase his own hygiene products at the commissary, he was eligible

4

to receive each month a free hygiene kit that included soap, toothpaste, a toothbrush, and deodorant. *Id.* at 51; dkt. 58-1 at 51; dkt. 58-4 at 1-2. Mr. Williams was responsible for submitting a request for the kit to the G-Cell House lieutenant, Defendant Lieutenant Pfleeger, who was during all times relevant to Mr. Williams' allegations responsible for providing the kits. Dkt. 58-1 at 51, 91; dkt. 58-4 at 1. Lieutenant Pfleeger denies that he withheld access to hygiene kits from Mr. Williams. Dkt. 58-4 at 2.

As a result of not having hygiene products, Mr. Williams "smelled really bad" and his breath "was terrible." Dkt. 58-1 at 52. He had skin irritation and developed rashes and a boil under his arm because he couldn't wash properly. *Id.* at 116–17. Further, he alleges he was denied medical care to address these, and other, concerns. *Id.* at 104, 109, 111, 115.

Defendants dispute that Mr. Williams was ever denied medical care. *See* dkts. 58-2 at 2, 58-3 at 3, 58-4 at 2.

Mr. Williams also alleges Lieutenant Pfleeger acted, or directed others to act, in a manner intended "to annoy or aggravate, to provoke, to harass" him and cause him harm. Dkt. 58-1 at 49, 123. He alleges Lieutenant Pfleeger directed non-party Sergeant Clymer to submit a false incident report, which he also signed, and encouraged other prison staff members to call him a snitch or other derogatory names almost daily. *Id.* at 124, 126-127, 129. Lieutenant Pfleeger denies harassing, or ordering others to harass, Mr. Williams. Dkt. 58-4 at 3. The Defendants moved for summary judgment, dkt. 57, and Mr. Williams responded, dkt. 61.

5

At screening, the Court allowed Eighth Amendment claims to proceed against Defendants Reagle, Bryant, and Pfleeger, based on Mr. Williams's allegations that he was subjected to inhumane conditions of confinement when Defendants failed to provide him with hygiene supplies, deprived him of medical care, and verbally abused him. Dkt. 14 at 8–9.

### III.
### Analysis

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough; the conduct must be reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

Further, "'[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Therefore, each defendant is considered independently. *Id.*

### A. Lieutenant Pfleeger

#### 1.    Denial of medical care

While Mr. Williams testified that he was deprived access to medical care, he does not designate evidence showing that Lieutenant Pfleeger was personally involved in such deprivation. *See* dkt. 58-1. Mr. Williams therefore fails to meet his burden in response to Lieutenant Pfleeger's summary judgment motion. *See Whitfield,* 76 F.4th at 706. Because Mr. Williams has not demonstrated that Lieutenant Pfleeger was personally responsible for depriving him of medical care, Lieutenant Pfleeger is entitled to summary judgment on that aspect of Mr. Williams's conditions of confinement claim.

#### 2.    Verbal harassment

"Repugnant words . . . will seldom rise to an Eighth Amendment violation." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019); *see Beal v. Foster,* 803 F.3d 356, 358 (7th Cir. 2015) ("[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment."). Rather, to reach unconstitutional levels, verbal harassment must be more extreme, such as a situation where prison staff "exploit[ ] a known vulnerability

7

to create a danger or harm that cannot have any legitimate penological purpose." *Lisle*, 933 F.3d at 718.

Here, Mr. Williams alleges Lieutenant Pfleeger directed his staff to use "name calling, things of that nature" to harass him, including by calling him "snitches" or other "derogatory names." Dkt. 58-1 at 126. While unprofessional, the conduct described by Mr. Williams is general and relatively benign. Therefore, it does not rise to the level of causing "severe psychological harm" and is not sufficient to constitute cruel punishment. *Beal*, 803 F.3d at 358-59 (noting sexual comments directed at plaintiff may be enough to rise to the level of an Eighth Amendment violation); *see Lisle*, 933 F.3d at 718 (listing examples of verbal conduct that would be sufficient, including telling "an inmate falsely that his family has been killed in a car crash"). Lieutenant Pfleeger is therefore entitled to summary judgment on Mr. Williams's claim that Lt. Pfleeger subjected him to inhumane conditions of confinement by verbally harassing him.

### 3.   Denial of hygiene products

Lieutenant Pfleeger argues that Mr. Williams cannot show a constitutional violation based on the conditions of his confinement because those conditions were not objectively sufficiently serious. Dkt. 59 at 6–8. In support, he cites to *Smith v. Reagle*, 2023 WL 2562275, No. 1:21-cv-00243-TWP-TAB (S.D. Ind. March 17, 2023). There, an inmate formerly incarcerated in G-Cell House at Pendleton sued prison officials for depriving him of adequate hygiene products. *Id.* at *1–2. The Court granted summary judgment for

defendants. *Id.* at *3. Lieutenant Pfleeger argues the same outcome must apply here. Dkt. 59 at 6-8.

In *Smith,* unlike here, it was "undisputed that [the plaintiff] was allowed to shower three times weekly" and was only deprived of hygiene products for ten days. *Id.* Additionally, there were no allegations that the plaintiff "developed a rash, sores, infections, or an especially foul odor." *Id.* Here, while it is unclear how often Mr. Williams was permitted to shower, he testified that he was regularly denied hygiene products for approximately four years. Dkt. 58-1 at 54. He "smelled really bad sometimes," to the point it "was like an animal cage in there," and his breath "was terrible." *Id.* at 52, 69. He also developed a boil under his arm, as well as skin rashes and other skin irritation. *Id.* at 116–17. A reasonable juror could find that Mr. William's conditions were objectively sufficiently serious.

Additionally, Lieutenant Pfleeger argues he was not deliberately indifferent to Mr. Williams's needs because he provided access to hygiene kits. Dkt. 59 at 8. It is undisputed that Lieutenant Pfleeger was responsible for overseeing the hygiene kits in G-Cell House at all relevant times. Dkts. 58-1 at 91, 58-4 at 1. While Lieutenant Pfleeger attests that "[i]ndigent offenders and all offenders on Strip Cell Status were given two (2) state issued hygiene packs at the beginning of each month" and he "never denied, or directed others to deny, Plaintiff access to hygiene products," dkt. 58-4 at 2, Mr. Williams alleges he was denied kits regularly, dkt. 58-1 at 54, so there is conflicting testimony as to whether Mr. Williams was regularly provided hygiene products.

Since Lt. Pfleeger was responsible for overseeing the kits, a reasonable juror could find he was "subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720 (describing the subjective component of the conditions-of-confinement claim); *see* dkt. 58-1 at 51 (Mr. Williams's deposition testimony stating he submitted a monthly request to the lieutenant for hygiene kits and "I wasn't getting it").

Therefore, because there is a genuine issue of material fact as to whether Lt. Pfeegler denied Mr. Williams access to hygiene products resulting in inhumane conditions of confinement, Defendants' motion for summary judgment is **denied** as to Lt. Pfleeger.

## B. Warden Reagle and Deputy Warden Bryant

### 1.   Denial of medical care and hygiene kits

Mr. Williams does not allege Warden Reagle or Deputy Warden Bryant took any action that deprived him of medical care or hygiene kits. Rather, he argues for the first time in his response that they violated his Eighth Amendment rights by failing to intervene. Dkt. 61 at 3–4.

The Seventh Circuit has "repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived." *O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) (collecting cases); *see also United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019) ("In most instances, litigants waive any arguments they make for the first time in a

reply brief."). Additionally, Mr. Williams has provided no explanation for his delay.

As his argument that Warden Reagle and Deputy Warden Bryant failed to intervene was not raised until his reply, it is waived, and the Court therefore does not address it on the merits.

### 2. Harassment

Because the Court has found that the verbal harassment alleged by Mr. Williams is not sufficient to constitute cruel punishment, claims alleging that Defendants Reagle and Bryant failed to intervene to stop verbal harassment are foreclosed. *Filmore v. Page,* 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). Therefore, summary judgment is **granted** as to the claims against Warden Reagle and Deputy Warden Bryant.

### IV.
### Conclusion

Defendants' motion for summary judgment is **GRANTED** as to Warden Reagle and Deputy Warden Bryant and **DENIED** as to Defendant Pfleeger. Dkt. [57]. Partial final judgment will not enter at this time.  The sole remaining aspect of Mr. Williams's Eighth Amendment claim is that Lt. Pfleeger subjected him to inhumane conditions of confinement by refusing to provide him with hygiene products.

The **clerk is directed** to terminate Defendants Reagle and Bryant from the docket.  The **clerk is directed** to change the remaining defendant's name from "M. Phleegel" to "M. Pfleeger" on the docket.

11

The Court *sua sponte* reconsiders Mr. Williams's motion for counsel, dkt. 25, and will attempt to recruit counsel to represent Mr. Williams through final judgment. However, **the clerk is directed** to send Mr. Williams a form motion for assistance with recruiting counsel because this form contains the terms and conditions of accepting counsel. Mr. Williams must complete the form and return it no later than **April 20, 2024**. The Magistrate Judge is requested to set the matter for a telephonic status conference once recruited counsel has appeared.

**SO ORDERED.**

Date: 3/20/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN WILLIAMS
865434
WABASH VALLEY – CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838

All Electronically Registered Counsel

Magistrate Judge Kellie Barr